# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

TRACY PINKNEY,

    Plaintiff,

v.                                Case No. 5:16-cv-00103-Oc-02PRL

CHARLES L. LOCKETT, DALE GRAFTON,
MICHELLE CHAVERS, MARVIN PITT,
JAMES TAYLOR,

    Defendants.
_____/

## ORDER

This action concerns alleged First Amendment retaliation against an inmate in federal custody. The matter comes to the Court on Plaintiff's Motion for Summary Judgment, Dkt. 38, and Defendants' Motion to Dismiss, or Alternatively, Motion for Summary Judgment. Dkt. 35. The Court DENIES Plaintiff's motion and GRANTS Defendants' motion.

## BACKGROUND

The Court outlined Plaintiff's allegations in its October 3, 2017 order dismissing some claims and Defendants in the Complaint. Dkt. 21. In relevant part and as alleged by Plaintiff, on June 13, 2016, Officer Morrison and another officer

searched Plaintiff's cell at FCC Coleman. Dkt. 16. at 14. They left the cell in disarray. *Id.* The next day Plaintiff again found his cell in disarray, so he approached Officer Morrison. *Id.* Officer Morrison stated that he could search Plaintiff's cell "everyday if he wanted to." *Id.* Plaintiff tried to resolve the issue before filing an administrative remedy, but Officer Morrison would not provide his name. *Id.* at 14-15.

Officer Morrison conducted another search the following day. *Id.* at 15. On June 17, 2016, Officer Morrison and another officer searched the cell and left the door open. *Id.* The next day, Defendants Lockett, Taylor, and Pitt were questioned regarding Officer Morrison's actions. *Id.* They replied that Officer Morrison's conduct was in accordance with policy. *Id.*

On June 19, 2016, Plaintiff notified Defendant Grafton and Counselor Bailey about Officer Morrison's conduct. *Id.* at 15-16. On June 20, 2016, Officers Morrison and Vaughn opened Plaintiff's cell door to search, but found his cell mate sick in bed. *Id.* at 16. The officers asked the cell mate to step out, but he refused. *Id.* Officer Morrison told the cell mate that the "shake down" occurred because he was "in the cell with a black person." *Id.*

Plaintiff filed administrative grievances, which Defendant Chavers processed on July 19, 2016. *Id.* Defendant Chavers notified the "Warden and Assistant Warden Pitt whom ordered Plaintiff to be immediately taken to special

housing," or "SHU."[1] *Id.* On August 2, 2016, the "Warden Lockett, [Captain] Taylor, Assistant Warden Pitt, Case Manager Coordinator Chavers and Unit Manager Grafton [were] doing SHU rounds to speak to inmates housed in special housing." *Id.* at 17. Defendant Pitt "suggested" that Plaintiff would not be filing any more grievances, and Defendant Grafton stated "I got you [now], your paper work for your transfer is rout[]ing! You['re] out of here." *Id.* Defendant Lockett asked the staff conducting the rounds to sign off on Plaintiff's transfer. *Id.* Plaintiff is now confined at U.S.P. Terre Haute. *Id.* at 2.

Plaintiff filed suit on First and Fourth Amendment claims, seeking $2,000,000.00 against each Defendant in both official and individual capacities. *Id.* at 2-5. Plaintiff does not mention injunctive relief in his Second Amended Complaint. *Id.* at 5. In its prior order, the Court dismissed the claims against Defendants Marberry, Vaughn, and Morrison as well as the Fourth Amendment and any Equal Protection claims. Dkt. 21 at 8. The Court further dismissed the claim for compensatory or punitive damages, leaving only nominal damages from

---

[1] Special Housing Units were created in accord with 28 C.F.R. §§ 541.20-541.33. "Special Housing Units (SHUs) are housing units in Bureau [of Prisons] institutions where inmates are securely separated from the general inmate population, and may be housed either alone or with other inmates. Special housing units help ensure the safety, security, and orderly operation of correctional facilities, and protect the public, by providing alternative housing assignments for inmates removed from the general population." 28 C.F.R. § 541.21. An inmate can be placed in the SHU on "administrative detention status" when necessary to ensure the safety, security, and orderly operation of correctional facilities or to protect the public. *Id.* § 521.22(a). An inmate can also be placed in the SHU on "disciplinary segregation status," which is a punitive status imposed by a Discipline Hearing Officer as a sanction for committing prohibited acts. *Id.* § 521.22(b).

the First Amendment retaliation claim against Defendants Lockett, Chavers, Grafton, Taylor, and Pitt for the allegedly retaliatory transfer and placement in the SHU. *Id.*

An appeal of that order was dismissed for failure to pay fees. Dkt. 34. The remaining Defendants have since filed their motion to dismiss, or alternatively, motion for summary judgment. Dkt. 35. Plaintiff has filed his own motion for summary judgment. Dkt. 38. The Court has also received briefing and evidence on Plaintiff's exhaustion of administrative remedies. Dkts. 35, 47.

## LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead sufficient facts to state a claim that is "plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (citation omitted). When considering the motion, the court accepts all factual allegations of the complaint as true and construes them in the light most favorable to the plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008) (citation omitted). Courts should limit their "consideration to the well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed." *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004) (citations omitted). Moreover, the Court may dismiss a cause of action when, "on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action." *See*

*Marshall Cty. Bd. of Educ. v. Marshall Cty. Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993). Likewise, a complaint is subject to dismissal for failure to state a claim when "its allegations, on their face, show that an affirmative defense bars recovery on the claim." *Cottone v. Jenne*, 326 F.3d 1352, 1357 (11th Cir. 2003).

## DISCUSSION

The Court finds that even if Plaintiff exhausted his administrative remedies, his allegations do not state a claim because the official capacity claims are effectively against the United States, which is immune from suit. As to individual liability, even if qualified immunity does not protect Defendants, there is no *Bivens* claim for First Amendment retaliation.[2]

I. <u>Exhaustion of Administrative Remedies</u>

In their motion, Defendants first argue that Plaintiff has failed to exhaust the administrative remedies available to him, which is grounds for dismissal. Dkt. 35 at 4-6; *see Porter v. Nussle*, 534 U.S. 516, 524 (2002). The Prison Litigation Reform Act ("PLRA") precludes prisoner actions "with respect to prison conditions . . . until such administrative remedies as are available are exhausted."[3] 42 U.S.C. § 1997e. The PLRA only requires that a prisoner exhaust his "available

---

[2] *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971).
[3] The PLRA also precludes claims for compensatory and punitive damages from a mental or emotional injury while in custody in the absence of a physical injury or sexual act. 42 U.S.C. § 1997e(e); *Brooks v. Warden*, 800 F.3d 1295, 1307-08 (11th Cir. 2015). The Court relied upon this section in dismissing some claims in its prior order. Dkt. 13 at 3-4; Dkt. 21 at 4.

administrative remedies." *Turner v. Burnside*, 541 F.3d 1077, 1083-84 (11th Cir. 2008) ("[I]t is possible for retaliation or the threat of retaliation to make administrative remedies unavailable to an inmate.").

As laid out by the Court in its January 31, 2019 order, deciding a motion to dismiss for failure to exhaust administrative remedies requires a two-step process. *Id.* at 1082. The Court first "looks to the factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, takes the plaintiff's version of the facts as true. If, in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed." *Id.* "If the complaint is not subject to dismissal at the first step, . . . the court then proceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion." *Id.* (citation omitted). "The defendants bear the burden of proving that the plaintiff has failed to exhaust his available administrative remedies." *Id.* (citation omitted).

The Eleventh Circuit has further instructed that a court may "consider facts outside of the pleadings and . . . resolve factual disputes so long as the factual disputes do not decide the merits and the parties have sufficient opportunity to develop a record." *Bryant v. Rich*, 530 F.3d 1368, 1376 (11th Cir. 2008). In their motion filed on February 2, 2018, Defendants provided exhibits in support of the argument. Dkt. 35-1 at 1. Plaintiff, proceeding *pro se*, has briefed the matter and

has provided some relevant materials attached to his motion for summary judgment. Dkt. 38-1 – 38-5. The Court has notified Plaintiff of the exhaustion issue as well as its significance multiple times, including invitations to file supplemental materials. Dkts. 45, 46.

BOP has established an Administrative Remedy Program under which an inmate may "seek formal review of an issue relating to any aspect of his/her own confinement" through a three-level process. 28 C.F.R. § 542.10; Dkt. 35-1 at 7. According to BOP records, on July 15, 2016, Plaintiff filed an administrative remedy at the institutional level complaining that an officer searched his cell and made a racist comment. Dkt. 35-1 at 8, 13. On August 23, 2016, Plaintiff filed another administrative remedy at the regional level, which was apparently rejected because Plaintiff was required to first file a BP-9 request through the institution for the Warden's review and response. *Id.* at 8, 45-51. Plaintiff filed subsequent appeals, all of which were rejected. *Id.* at 8-9.

There is no indication in the record, however, that Plaintiff filed at any level an administrative remedy related to the retaliation claim, either for being placed in the SHU or transferred from Coleman. *Id.* at 9, 18-44. Plaintiff argues he was "hindered from filing his administrative remedies." Dkt. 47 at 1. In support, he points to the statement by Defendants Pitt and Grafton that "you['re] out of here[,] you won't be filing any more grievances." *Id.* at 2. Additionally, he claims that on

7

August 10, 2019, he requested from Defendant Grafton a BP-8, but Defendant Grafton "proceeded straight pas[t] my assigned cell" and ignored the request. *Id.* Similarly, though every Wednesday the executive staff walks through the SHU to address any issues inmates may have, the staff would simply walk past Plaintiff's cell. *Id.* at 3. Apparently the individual designated to administer the remedies, Counselor Bailey, did not visit SHU. *Id.* at 2.

Plaintiff's assertion is belied by his remedy at the institutional level filed on August 23, 2016 as well as the subsequent filings. The Court, however, need not ultimately resolve this issue because, even if Plaintiff exhausted his remedies, his First Amendment retaliation claim still fails.

II. Official Capacity Claims

Plaintiff's official capacity claims for damages against Defendants, federal employees, are effectively against the United States. *See Dugan v. Rank*, 372 U.S. 609, 620 (1963). The claims are therefore not cognizable because the United States has not waived its sovereign immunity for constitutional torts. *FDIC v. Meyer*, 510 U.S. 471, 475-80 (1994); *see also Lopez v. United States*, 656 F. App'x 957, 966 (11th Cir. 2016) (citing *Meyer* in finding that First Amendment retaliation claim is not cognizable under the Federal Tort Claims Act); *Simons v. Vinson*, 394 F.2d 732, 736 (5th Cir. 1968) ("The immunity of the sovereign, however, extends to its

agencies . . . and the officers of these agencies.")[4]. Waivers of sovereign immunity must be "unequivocally expressed." *United States v. Nordic Village, Inc.*, 503 U.S. 30, 33-34 (1992) (citation omitted).

There is no such waiver here. The official capacity claims are dismissed.

III. Individual Capacity Claims

By allowing the First Amendment claim to proceed in its earlier order, the Court did not thereby foreclose a second look at its availability.[5] Indeed, the Court finds that even if qualified immunity does not protect Defendants from suit, there is no *Bivens* claim for First Amendment retaliation.

1. Qualified Immunity

Qualified immunity shields government officials from suits in their individual capacities when they act within the scope of their discretionary authority. *Lee v. Ferraro*, 284 F.3d 1188, 1193-94 (11th Cir. 2002) (citation omitted). The issue of qualified immunity should be decided "as early in the lawsuit as possible" because it is a defense not only from liability but from suit. *Id.*

---

[4] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981), the Eleventh Circuit adopted as binding precedent the decisions of the U.S. Court of Appeals for the Fifth Circuit rendered prior to the close of business on September 30, 1981.

[5] In its February 21, 2017 order, the Court did not definitively determine the applicability of *Bivens* in a First Amendment retaliation context. Dkt. 13 at 2-3. Rather, the Court assumed its existence for purposes of resolving the motion. *Id.* Indeed, since that order predating *Ziglar v. Abbasi*, 137 S. Ct. 1843 (2017) and the cases relied upon therein, *e.g.*, *Hollins v. Samuals*, 540 F. App'x 937 (11th Cir. 2013); *Walden v. CDC & Prevention*, 669 F.3d 1277 (11th Cir. 2012); *Burns v. Warden, USP Beaumont*, 482 F. App'x 414 (11th Cir. 2012), the Eleventh Circuit has expressed some hesitation as evidenced in cases like *Rager v. Augustine*, No. 18-10834, 2019 WL 413750 (11th Cir. Feb. 1, 2019).

at 1194 (citation omitted). The protection attaches unless the officials' conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* at 1193-94 (citation omitted). Once an official demonstrates that his actions were within the scope of his discretionary authority, the plaintiff can only overcome qualified immunity by showing that (1) the defendant violated a constitutional right; and (2) this right was clearly established at the time of the alleged violation. *Id.* (citation omitted). In handling Plaintiff's complaints and transferring him to the SHU and Terre Haute, Defendants were acting within their discretionary authority.

The First Amendment prohibits officials from retaliating against prisoners for exercising their right of free speech. *Thomas v. Evans*, 880 F.2d 1235, 1241-42 (11th Cir. 1989). To establish a retaliation claim, an inmate must demonstrate that: "(1) his speech was constitutionally protected; (2) [he] suffered adverse action such that the . . . retaliatory conduct would likely deter a person of ordinary firmness from engaging in such speech; and (3) there is a causal relationship between the retaliatory action and the protected speech." *Smith v. Mosley*, 532 F.3d 1270, 1276 (11th Cir. 2008) (citation omitted).

Filing an administrative grievance is protected speech. *Id.* (citation omitted). And, though an inmate does not possess a constitutional right not to be transferred, a retaliatory transfer nonetheless provides a claim under the First Amendment. *See,*

*e.g.*, *Bennett v. Hendrix*, 423 F.3d 1247, 1253 n.6 (11th Cir. 2005) (citation omitted). But if a "prisoner violates a legitimate prison regulation" he is not engaged in "protected conduct." *Thaddeus-X v. Blatter*, 175 F.3d 378, 395 (6th Cir. 1999). Additionally, a "defendant can prevail on summary judgment if it can show it would have taken the same action in the absence of the protected activity." *Smith v. Florida Dep't of Corr.*, 713 F.3d 1059, 1063 (11th Cir. 2013).

Defendants set forth evidence to undercut Plaintiff's retaliation claim. For example, though Plaintiff alleges he was ordered to be "immediately" taken to the SHU after his remedy was processed by Defendant Chavis on July 19, 2016, BOP records suggest Plaintiff was not placed in the SHU until August 19, 2016. Dkt. 35-1 at 58. Plaintiff also claims the retaliation involved conversations he had with Defendants as they conducted rounds in the SHU on August 2, 2016. But BOP records once more suggest Plaintiff was not in the SHU that day. *Id.* Additionally, records indicate that on that day Defendants did not enter the SHU. *Id.* at 63.

The record further suggests Plaintiff remained in the SHU for administrative detention pending determination of whether Plaintiff posed a threat to Officer Morrison. Dkt. 35-1 at 65-67. According to a report, on August 18, 2016 the Special Investigative Services Department (SIS) became aware of an administrative remedy filed by Plaintiff in which he wrote, "we're going to get into a physical altercation because of [Officer Morrison] singling/or making it

11

personal." *Id.* at 67. During an August 22, 2016 interview with an SIS investigator, Plaintiff stated, "it will become physical between me and Officer Morrison. Officer Morrison will have problems. . . . Officer Morrison is going to get hurt doing things like this." *Id.* at 66. SIS determined that Plaintiff posed a threat to a staff member and recommended that Plaintiff remain in the SHU pending a transfer to another institution. *Id.* at 67.

Be that as it may, the Court finds that Plaintiff has not been adequately noticed on this matter. Under the Federal Rules of Civil Procedure, "[i]f, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). It is within the Court's discretion to decide whether to consider matters outside of the pleadings that are presented to the court. *Property Mgmt. & Invs., Inc. v. Lewis*, 752 F.2d 599, 604 (11th Cir. 1985). When a *pro se* litigant is the non-moving party, he must be given express notice of his right to file affidavits or other material in opposition to the motion and the consequences of default. *See Griffith v. Wainwright*, 772 F.2d 822, 825-26 (11th Cir. 1985).

It is unnecessary in this case, however, to supplement the record on either the failure to exhaust or qualified immunity issue because there is simply no *Bivens*

12

claim for First Amendment retaliation. The Court thus dismisses Plaintiff's remaining claim without converting Defendant's motion to one for summary judgment.

2. *Bivens*

The Court at last determines that there is no *Bivens* claim for First Amendment retaliation. Although Defendants did not raise the issue in their motion, it is appropriate for the Court to address *sua sponte*. *See Rager v. Augustine*, No. 18-10834, 2019 WL 413750, at *5 (11th Cir. Feb. 1, 2019) ("*Rager II*") (affirming district court's *sua sponte* dismissal of First Amendment retaliation claims against defendant warden because *Bivens* did not create a remedy); *see also Bistrian v. Levi*, 912 F.3d 79, 89 (3d Cir. 2018) (court may consider the existence of a *Bivens* remedy on its own because assuming its availability risks needless expenditure of the parties' and the court's time and resources).

In *Bivens*, 403 U.S. 388, the United States Supreme Court recognized an implied right of action for damages against federal officers for violations of the Fourth Amendment. The Court has extended the *Bivens* remedy to only two other contexts: a Fifth Amendment equal protection claim for sex discrimination in employment and an Eighth Amendment claim against federal prison officials for failure to provide medical treatment. *Davis v. Passman*, 442 U.S. 228, 248-49 (1979) (Fifth Amendment); *Carlson v. Green*, 446 U.S. 14, 19-23 (1980) (Eighth

Amendment). The Supreme Court has repeatedly refused to extend the *Bivens* remedy to other contexts, including a claim for violation of the First Amendment. *See Bush v. Lucas*, 462 U.S. 367, 390 (1983); *see also Rager v. Augustine*, No. 5:15cv35/MW/EMT, 2017 WL 6627416, at *15 (N.D. Fla. Nov. 8, 2017) ("*Rager I*") (collecting cases), *report and recommendation adopted by* 2017 WL 6627784 (N.D. Fla. Dec. 28, 2017), *aff'd*, *Rager II*, 2019 WL 413750.

In *Ziglar v. Abbasi*, 137 S. Ct. 1843 (2017), the Supreme Court clarified the procedure for a court to recognize a *Bivens* remedy. The Court emphasized that it has consistently refused to extend *Bivens* to any new context and that expanding the *Bivens* remedy is "now a 'disfavored' judicial activity." *Id.* at 1857 (quotation marks and citation omitted). It explained that expanding the *Bivens* remedy implicates separation-of-powers concerns and that, in most cases, Congress should decide whether to provide a remedy. *Id.* Thus, a court must first ask whether the claim arises in a new *Bivens* context—that is, whether the case is different in a meaningful way from prior *Bivens* cases decided by the Supreme Court. *Id.* at 1859. A case might present a novel *Bivens* context:

> because of the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem . . . to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other

> branches; or the presence of other potential special
> factors that previous *Bivens* cases did not consider.

*Id.* at 1860.

If the case presents a novel *Bivens* context, the court must determine whether there are "special factors counselling hesitation." *Id.* at 1857 (quotation marks and citation omitted). This inquiry asks whether the judiciary is well suited, absent action from Congress, "to consider and weigh the costs and benefits of allowing a damages action to proceed." *Id.* at 1857-58. A special factor is one that "cause[s] a court to hesitate before answering that question in the affirmative." *Id.* at 1858. If there is an alternative remedial structure, that alone may prevent extending the *Bivens* remedy. *Id.* In general, "if there are sound reasons to think Congress might doubt the efficacy or necessity of a damages remedy as part of the system for enforcing the law and correcting a wrong," the courts must refrain from extending the *Bivens* remedy. *Id.* In making this assessment, the court should consider "the burdens on Government employees who are sued personally, as well as the projected costs and consequences to the Government itself. . . ." *Id.* The court should also consider whether Congress "has designed its regulatory authority in a guarded way, making it less likely that Congress would want the Judiciary to interfere." *Id.*

The Supreme Court has never recognized a *Bivens* remedy for violations of the First Amendment. *Reichle v. Howards*, 566 U.S. 658, 663 n.4 (2012).

Moreover, the facts of Plaintiff's retaliation claims differ from the Fourth Amendment unreasonable search and seizure claim at issue in *Bivens*,[6] the gender discrimination claim in *Davis*, and the deliberate medical indifference claim in *Carlson*. Thus, this case presents a new *Bivens* context. *See, e.g.*, *Atkinson v. Broe*, No. 15-cv-386-wmc, 2019 WL 231754, at *2 (W.D. Wis. Jan. 16, 2019) (concluding that plaintiff's First Amendment retaliation claims presented new *Bivens* context); *Rager I*, 2017 WL 6627416, at *17 (finding that plaintiff's claim that defendants violated the First Amendment by retaliating against him for filing internal grievances presented a new *Bivens* context).

Additionally, Plaintiff arguably had alternative remedies available to him in the form of a suit for injunctive relief and the BOP grievance process. And, even if Plaintiff did not have alternative remedies, the Court also finds that other special factors counsel hesitation. It is notable that Congress did not provide a standalone damages remedy when it enacted the PLRA.

In addition, the particular nature of Plaintiff's retaliation claim counsels hesitation. Here, Plaintiff alleges that he complained about racially motivated searches to his cell and that, consequently, he was housed in the SHU and transferred. Retaliation claims implicate a defendant's state of mind, which is

---

[6] That Plaintiff's underlying grievance implicated the Fourth Amendment does not change the calculus. The remaining claim on which Plaintiff seeks relief is for First Amendment retaliation.

rarely susceptible of concrete proof. As a result, retaliation claims are "easily fabricated." *Bistrian*, 912 F.3d at 96. By its nature, life in a federal prison can be harsh. Recognizing a *Bivens* remedy for First Amendment retaliation claims could lead to the unwanted result of inmates filing grievances against correctional officers and then claiming that any negative action that followed was a result of retaliatory animus. *Andrews v. Miner*, 301 F. Supp. 3d 1128, 1135 (N.D. Ala. 2017). The costs of such actions would be high. *Id*; *see also Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995) (noting that because of "the near inevitability of decisions and actions by prison officials to which prisoners will take exception and the ease with which claims of retaliation may be fabricated," a prisoner's retaliation claim should be evaluated "with skepticism and particular care").

Furthermore, as it relates to punitive detention in the SHU, the court in *Bistrian* noted an additional special factor counseling against *Bivens*. *Bistrian*, 912 F.3d at 96. "Whether to place an inmate in more restrictive detention involves real-time and often difficult judgment calls about disciplining inmates, maintaining order, and promoting prison officials' safety and security." *Id.*

Finally, the Court notes that, since *Abbasi*, most courts have declined to extend the *Bivens* remedy to First Amendment claims. *See Atkinson*, 2019 WL 231754, at *5 (collecting cases); *see also Rager II*, 2019 WL 413750, at *5 ("[I]t is by no means clear that a damages remedy is warranted for a First Amendment

retaliation claim like this one."). On the facts presented here, it is not appropriate to extend the *Bivens* remedy to Plaintiff's First Amendment retaliation claim. Dismissal of Plaintiff's only remaining claim is therefore warranted.

## CONCLUSION

The Court DENIES Plaintiff's Motion for Summary Judgment, Dkt. 38, and GRANTS Defendants' Motion to Dismiss, or Alternatively, Motion for Summary Judgment. Dkt. 35. As amendment would be futile, the case is DISMISSED with prejudice. The Clerk is instructed to terminate any pending motions and close the case.

**DONE AND ORDERED** at Tampa, Florida, on March 19, 2019.

*/s/ William F. Jung*
**WILLIAM F. JUNG**
**UNITED STATES DISTRICT JUDGE**

**COPIES FURNISHED TO:**
Counsel of Record
Plaintiff, pro se